**WO**                                                                                                                           SVK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Tillmon,                )<br>                                         )<br>           Plaintiff,             )<br>                                         )<br>vs.                                    )<br>                                         )<br>Maricopa County, et al.      )<br>                                         )<br>           Defendants.        )<br>                                         )<br>_____ ) | No. CV 07-0746-PHX-MHM (LOA)<br><br>**ORDER** |

Plaintiff Richard Tillmon filed this civil rights action under 42 U.S.C. § 1983 against various employees of the Maricopa County Sheriff's Office (MCSO). (Doc. #42, Amend. Comp.)  Defendants move for summary judgment.[1]  (Doc. #106.)  The motion is fully briefed. (Doc. ##114, 115.)

The Court will grant the motion in part and deny it in part.

**I.   Background**

Plaintiff raised three counts in his Amended Complaint.  In Count I, Plaintiff raised federal and state claims alleging that MCSO Officers Rodriguez and Misquez used excessive force on Plaintiff while Plaintiff was at the Maricopa County Courthouse for his initial appearance.  (Doc. #42, Count I.)  In Count II, Plaintiff raised federal and state claims alleging that Maricopa County, Sheriff Arpaio, and the Maricopa County Board of

---

[1] The Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), advising Plaintiff of his obligation to respond. (Doc. #112.)

Supervisors had policies and practices that resulted in the use of excessive force on Plaintiff as described in Count I. (Id., Count II.) In Count III, he raised federal and state claims alleging that after he suffered injuries as a result of the excessive force used by Defendants, nurse McBride only wrapped Plaintiff's arm and gave him Tylenol for pain, failed to provide further treatment or medication, and failed to schedule further medical visits. (Id., Count III.) The Court directed Defendants to answer the First Amended Complaint. (Doc. #41.)

Defendants move for summary judgment on the grounds that (1) no excessive force was used against Plaintiff; (2) McBride was not deliberately indifferent to Plaintiff's medical needs; (3) Plaintiff presents no evidence in support of his claims against Arpaio, Maricopa County, or the Maricopa County Board of Supervisors; (4) Rodriguez, Misquez, and McBride are entitled to qualified immunity; and (5) Plaintiff's state-law claims should be dismissed. (Doc. #106.)

**II.    Legal Standard—Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts

showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). However, Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

**III.    Federal Claims**

    **A.    Counts I and II—Excessive Force**

        **1.    Legal Standard**s

The Fourth Amendment establishes the constitutional parameters for claims of excessive force during pretrial detention. Lolli v. County of Orange, 351 F.3d 410, 415 (9th Cir. 2003) (citing Gibson v. County of Washoe, 290 F.3d 1175, 1197 (9th Cir. 2002). The Fourth Amendment does not prohibit the use of reasonable force. Tatum v. City and County of San Francisco, 441 F.3d 1090, 1095 (9th Cir. 2006). Whether the force was excessive depends on "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."

Graham v. Connor, 490 U.S. 386, 397 (1989). See also Tatum, 441 F.3d at 1095; Lolli, 351 F.3d at 415. The Court must balance the nature and quality of the intrusion against the countervailing governmental interests. Id. Moreover,

> [t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97 (citation omitted).

In determining whether an officer acted reasonably under the Fourth Amendment, the Court considers the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. The court must balance the nature and the quality of the intrusion on the individual's Fourth Amendment interests against the government interests at stake. Id. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8 (1985)). Whether the amount of force used was reasonable is usually a question of fact for the jury. Barlow v. Ground, 943 F.2d 1132, 1135 (9th 1991). Summary judgment should be granted sparingly. Bell v. City of Seattle, 395 F. Supp. 2d 992, 998 (W.D. Wash. 2005).

In addition, liability may be imposed on the county only if a plaintiff establishes that his injuries were inflicted pursuant to an official county policy or custom. Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989). And there is no *respondeat superior* liability under § 1983; therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. Monell v. New York City Department of Social Services, 436 U.S. 658, 691-92 (1978); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Official county policy may only be set by an official with "final policymaking authority." Thompson, 885 F.2d at 443 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 481-83 (1986) (plurality opinion)). In Arizona, the responsibility of operating jails is placed by law upon the Sheriff. See Ariz. Rev. Stat. § 11-441(A)(5);

1  Ariz. Rev. Stat. § 31-101.

2          **2.    Parties' Contentions**

3              **(a)    Defendants**

4  In support of their motion, Defendants submit their Statement of Facts (Doc. #107,

5  DSOF) and 17 exhibits, including the affidavits of Misquez (id., Ex. 4) and McBride (id.,

6  Ex. 8), various medical records and reports, and a CD with surveillance footage of events

7  at the Fourth Avenue Jail (id., Ex. 3.)

8  Plaintiff was arrested and booked into the Maricopa County Jail on May 28, 2006.

9  (DSOF ¶ 2.) On May 29, 2006, Plaintiff was taken with other inmates to the Initial

10 Appearances Courtroom for his first appearance before a judge on his criminal charges. (Id.

11 ¶ 3.) Misquez escorted Plaintiff from the isolation tank to the courtroom and recalls that

12 Plaintiff seemed "out of it." (Id. ¶ 3; Misquez Aff ¶ 4.) Defendants assert that Plaintiff told

13 a jail psychologist on July 20, 2006, that while in the courtroom on the morning of May 29,

14 2006, he was high and dozing off from using drugs. (DSOF ¶ 4.)

15 The courtroom detention officers instructed the inmates to remain seated and quiet

16 because the judge would soon be taking the bench, but Plaintiff began making unnecessary

17 noise and creating a disturbance by standing up and talking. (Id. ¶ 5.) Rodriguez told Plaintiff

18 to sit and be quiet, but Plaintiff continued to cause a disturbance in the courtroom. (Id. ¶ 6.)

19 Plaintiff then walked to the back of the courtroom, faced the wall, and demanded to be taken

20 back to his cell. (Id.) Rodriguez handcuffed Plaintiff behind his back and walked him into a

21 hallway. (Id.)

22 Once in the hallway, Rodriguez called for assistance and placed Plaintiff against the

23 wall, face first. (Id. ¶ 7.) Defendants assert that Plaintiff struggled and moved his body and

24 head away from the wall and told Rodriguez that he would "f--k [him] up" and "kick [his] ass."

25 (Id.) To gain control of Plaintiff and to keep him from coming away from the wall and either

26 kicking or head-butting him, Rodriguez put his right knee into the back of Plaintiff's right

27 thigh. (Id.)

28 Shortly thereafter, Misquez arrived in response to the radio call to assist, and Misquez

-5-

1 removed Plaintiff from the hallway, taking hold of his left arm. (Id. ¶ 8; Misquez Aff. ¶ 7.)
2 Plaintiff struggled with Misquez, dropping himself to his knees and refusing to walk further.
3 Both officers placed Plaintiff on the floor and radioed for assistance. (DSOF ¶ 8, Misquez ¶
4 9.) They kept Plaintiff in a prone position on the floor for a few seconds until other detention
5 officers arrived. (DSOF ¶ 9; Misquez ¶ 9.) Once back-up arrived, Plaintiff was lifted off the
6 floor and placed on his feet by officers. (DSOF ¶ 9.)

7 Misquez then escorted Plaintiff to an isolation cell and the door was secured.
8 (Misquez ¶ 19.) Plaintiff placed his handcuffed hands behind his back, through the trap
9 door of the cell. (DSOF ¶ 10.) A few moments later, officers removed Plaintiff's single set
10 of handcuffs and closed the cell's trap door. (Id.) During their interactions with Plaintiff,
11 Rodriguez and Misquez made no attempt to conceal their badges or identities. Plaintiff
12 never asked either his name or badge number. (Id. ¶ 11.)

13 Before beginning their jobs, both Rodriguez and Misquez were trained at the
14 Maricopa County Sheriff's Department's detention officer training academy, including
15 instruction in the appropriate use of force. (Id. ¶ 12; Misquez Aff. ¶ 2.) Plaintiff was not
16 taken into a separate closet-sized room, as he has alleged in his Amended Complaint and in
17 his statement to Internal Affairs investigators; no such room or closet exists along the path
18 taken from the Initial Appearances Courtroom to the isolation cell in which Plaintiff was
19 placed. (DSOF ¶ 13.) Plaintiff was not double handcuffed; only one set of handcuffs is
20 evident in the video footage, and Misquez recalls a single set of handcuffs being removed
21 from Plaintiff's wrists after he was placed in the isolation cell. (Id. ¶ 14; Misquez Aff. ¶¶ 6,
22 11, 20.) According to MCSO's usual custom and practice, video footage was taken of the
23 areas through which Plaintiff was escorted, capturing these events, and the video footage
24 was preserved. (DSOF ¶ 15.) Defendants argue that although Plaintiff's Amended
25 Complaint alleges that Defendants slammed his head into a concrete wall; pushed him to
26 the floor; stepped on his back and repeatedly beat him with their fists and knees while he
27 was on the floor; put a knee on his broken jaw; placed a second set of handcuffs on him;
28 and picked him up and rammed his head into a wall, Plaintiff provides no evidence to

-6-

1 support any of these allegations.  They argue that  both Defendants deny having committed
2 these acts, the video footage of the incident demonstrates that none of the acts occurred,
3 and there are no documented injuries consistent with an assault. (Doc. #106 at 9.)

4 Defendants further argue that Defendants' use of force against Plaintiff consisted
5 solely of two acts: Rodriguez placing his right knee briefly against the back of Plaintiff's
6 right thigh and both Defendants maintaining Plaintiff in a prone position on the floor for a
7 few seconds while awaiting assistance of other officers because Plaintiff  had dropped
8 himself to his knees and refused to walk further.  They assert that Plaintiff had been acting
9 strangely in the courtroom, had been creating a disturbance, and was under the influence of
10 drugs.  Plaintiff threatened to assault Rodriguez and was attempting to turn away from the
11 wall just before Rodriguez put his right knee briefly against the back of Plaintiff's thigh.  It
12 was reasonable for Rodriguez to protect himself and to maintain Plaintiff's position against
13 the wall until assistance arrived. They further argue that once Plaintiff dropped himself to
14 the floor and refused to walk, the officers could not have safely dragged an uncooperative
15 inmate to a cell, and they did not attempt to do so. Rodriguez and Misquez acted reasonably
16 in holding Plaintiff in the prone position for a few seconds while waiting for other detention
17 officers.  They argue that balanced against the government interests of maintaining order
18 and safety within a jail, these acts are, at most, minimal intrusions on Plaintiff's Fourth
19 Amendment interests and not unreasonable under the circumstances.

20 As to Arpaio, Maricopa County, and the Maricopa County Board of Supervisors,
21 Defendants argue that Plaintiff has not demonstrated that there is a persistent, permanent
22 and well-settled practice by any of these Defendants that gave rise to any alleged violation
23 of his constitutional rights and which proximately caused him any injury.  Both Defendant
24 officers received training, and there is no link between any policy and Plaintiff's alleged
25 injuries.
26 ///
27 ///
28 ///

**(b)     Plaintiff**

In support of his opposition,[2] Plaintiff submits his Motion to Respond (Doc. #114), including exhibits A-F.

Plaintiff asserts that Rodriguez was fired from MCSO for assaulting Plaintiff. (Id. at 5.) He submits a termination letter, dated November 14, 2007, addressed to Rodriguez. (Id., Ex. B.) The letter details several causes for the termination, including matters that appear to be related to the incident about which Plaintiff complains.[3] Plaintiff asserts that he received a letter from MCSO Internal Affairs indicating that after a "complete investigation" into Plaintiff's complaint, the investigations indicate that Rodriguez's actions were "inappropriate and outside of guidelines established by policy and procedure." (Id. at 12; Ex. C, letter from Internal Affairs, dated April 25, 2008, addressed to Plaintiff.)

Plaintiff also asserts that Rodriguez was arrested on May 29, 2006, for assaulting Plaintiff. (Id. at 15.) He submits a Maricopa County Release Questionnaire, showing the offense location of 201 South Fourth Avenue, Phoenix, Arizona, on May 29, 2006. (Id., Ex. D.) Plaintiff also submits MCSO, Internal Affairs Division, Case Summary Report regarding the investigation of Plaintiff's complaint. (Id., Ex. E.) The summarized "Findings" note that "[o]n May 29, 2006, Officer Rodriguez A9568 [document blacked out] when he delivered a knee strike to Tillman's right leg, while Tillman was handcuffed from behind and facing a wall, with no movement toward Rodriguez [document blacked out]. . . ." (Id., Ex. E, Findings at 2.)

Plaintiff also accuses counsel of deceit and subterfuge regarding negotiations in connection with counsel's request for tax returns or other proof to substantiate Plaintiff's claims of lost earnings or $160,000 to $375,000 per year. (Doc. #114-2 at 28, Ex. F.) Plaintiff asserts that he is still seeking medical treatment for his injuries, which were more

---

[2]Plaintiff objects to Defendants' motion as untimely, asserting that it was due by April 15, 2008. (Doc. #114 at 1-2.) The Scheduling Order was amended to require dispositive motions by September 3, 2008. (Doc. #65.) Defendants' motion therefore is timely.

[3]The Court notes that portions of Plaintiff's exhibits have been blacked out.

-8-

1 than *de minimis*. (Id. at 34.)

2     Plaintiff also states that the CD submitted by Defendants does not show all the abuse
3 suffered by Plaintiff and that there were activities that occurred that are not shown on the
4 CD. (Id. at 34-5.) For example, the CD does not show that the Judge and two other people
5 came to Plaintiff's cell. (Id. at 35-6.) Plaintiff also argues that the investigators have
6 reason to minimize the damages seen on the video. (Id. at 36.)

7     **(c)    Reply**

8     In their reply, Defendants assert that Plaintiff fails to file a Separate Statement of Facts
9 as required by Local Rule of Civil Procedure 56.1(b) or to provide correspondingly numbered
10 paragraphs indicating whether he disputes each paragraph of DSOF. (Doc. #115 at 2.) They
11 claim that Plaintiff's response provides no facts at all—merely Plaintiff's own assertions with
12 no supporting evidence and that because he did not controvert DSOF, all of Defendants' facts
13 should be deemed admitted pursuant to LRCivP 56.1. (Id. at 2-3.) Defendants also maintain
14 that Plaintiff did not address any of his claims against Maricopa County, the Maricopa County
15 Board of Supervisors, Arpaio, or nurse McBride and offers no opposition to Defendants'
16 evidence and presents no facts to controvert those set forth by Defendants. (Id. at 3.)

17     As to Rodriguez and Misquez, they argue that Rodriguez was terminated for violating
18 various policies of the MCSO and the letter to Rodriguez regarding his dismissal from
19 employment does not state that he used excessive force. (Id. at 4-5; ref. Doc. #114, Ex. B.)
20 They argue that Plaintiff's Exhibit A states that Rodriguez used "unnecessary force against
21 Plaintiff; it does not state that he used *excessive* force." (Id. at 5) (Emphasis in original). They
22 also point out that the district attorney's office declined to prosecute Rodriguez because the
23 evidence does not support Plaintiff's allegations, the video surveillance does not show an
24 assault, and the medical records do not support the injuries claimed. (Id. at 5; Doc. #116,
25 Supplement to Separate Statement of Facts ¶ 1, Ex. 18.) They note that Plaintiff's response
26 contains no reference to Misquez's acts. (Id.)

27     Defendants argue that the video footage is complete, that it came from different cameras
28 throughout the Jail, and that it does not support Plaintiff's claims. (Id.) They assert that

-9-

although Plaintiff has claimed to have a video of the events, he has never produced a copy of it during discovery. (Id. at 6, n. 1.) Finally, they argue that Plaintiff produced no evidence of injuries, even though he claims that he is "still getting treatment." (Id. at 6.)

### 3.  Analysis

First, the Court declines to deem Defendants' Statement of Facts as admitted and notes that Plaintiff has clearly disputed some of the facts asserted by Defendants and has provided some supporting evidence for the matters he alleges in his opposition. *Pro se* pleadings are liberally construed.  Haines v. Kerner, 404 U.S. 519 (1972). Second, Defendants' motion regarding excessive force is limited to the federal claims; Defendants discuss only the Fourth Amendment standard and do not address the substance of the state law claims.[4] (Doc. #106 at 8.) As to the federal claims, although Plaintiff asserted claims under the Fourth, Fifth, and Eighth Amendments in Count I and the Fourteenth Amendment in Count II, his allegations state claims only under the Fourth Amendment. (Doc. #42.)

The Court will deny the motion as to Rodriguez because there is a genuine dispute of fact as to the need for force—and therefore, its reasonableness—and as to the force used. Although Defendants argue that Plaintiff was attempting to turn away from the wall and had cursed at and threatened Rodriguez, Plaintiff offers evidence that he was handcuffed and did not move at all just prior to Rodriguez inflicting a knee strike. And although the medical records do not show severe injuries or any head injuries, it is clear that Plaintiff, who already had a broken jaw, complained after the incident and received pain medication and a splint for his arm. Moreover, Defendants admit that Plaintiff submits evidence showing that Rodriguez used unnecessary force. (Doc. #115 at 5, ref. Doc. #114, Ex. A.) Although it does not appear to the Court that Exhibit A makes this finding, in the course of the Internal Affairs investigation, a witness who apparently viewed the video footage was asked if he saw

---

[4]In Count I, Plaintiff asserted state law claims under the Arizona Constitution and for assault, battery, intentional and negligent infliction of emotional distress and general negligence; and in Count II he asserted state law claims under the Arizona Constitution and for "intent" and negligence. (Doc. #42.)

1 resistance from the inmate to warrant any type of defensive knee strike and stated:

> He, he turned and put his hands behind his back to cuff up and said take me outta here. [document blacked out] The only physical activity that I saw was Officer Rodriguez pushing him against the wall by the cuffs controlling him and several in the hand at the back of the head holding him by the back of the neck. No movement by the inmate. His hands don't move; his feet don't move. He's got him by the back and he throws a knee strike into him? [document blacked out]. . . .

(Doc. #114, Ex. E at 13.)

In addition, the Court has reviewed the video footage of the incident. (Doc. #106, Ex. 3.) In <u>Scott v. Harris</u>, 550 U.S. 372, 127 S. Ct. 1769, 1776 (2007), the Supreme Court held that on summary judgment in an excessive force claim, a court could not rely on the plaintiff's version of events when that version was so utterly discredited by video tape that captured the events that no reasonable jury would believe the plaintiff. In the present case, although the video does not demonstrate the beating described by Plaintiff, the Court finds that the video is inconclusive. It shows Plaintiff being cuffed in the courtroom and then moved through doorways and hallways to a small cell; there appear to be several views of each area from different cameras. After the cuffing, Plaintiff is seen moving through a doorway and into a hallway, where Rodriguez moves or pushes Plaintiff into a corner and pushes Plaintiff's head toward or into the wall. The knee strike described above does not appear to be very forceful, but it also does not appear to be necessary as Plaintiff is handcuffed and facing the wall; Plaintiff has his back to Rodriguez and does not seem to be moving toward the officer.[5] But more important, there is a later period when Plaintiff is apparently on the floor with two to three or more officers on top of him; because of the camera angles, it is not possible to determine what the officers are doing, but Plaintiff's leg is moving rapidly up and down and kicking the floor while he is apparently lying face down. Plaintiff alleged that his head was slammed into the floor while he was down. Thus, unlike the tape in <u>Scott</u>, the tape here does not so utterly discredit Plaintiff's version of events that no reasonable jury would believe him.

---

[5]There is no sound with the video.

-11-

As stated, the evidence shows only minor injuries. But as the Supreme Court noted in Hudson v. McMillan, 503 U.S. 1, 9 (1992), although an inmate, who was beaten while handcuffed, suffered only minor injuries that required no medical attention, an Eighth Amendment violation was established because "[p]unishments . . . 'involv[ing] the unnecessary and wanton infliction of pain' are 'repugnant to the Eighth Amendment.'" See also, Bingham v. City of Manhattan Beach, 341 F. 3d 939, 947 (9th Cir. 2002) (noting that although the Supreme Court has held that some intrusions may be so minor as to not violate the Fourth Amendment at all, the Court has never held that actions that do violate the Fourth Amendment may result in so little harm that § 1983 is not an available remedy). Although Hudson is an Eighth Amendment case because that inmate was a prisoner, not a pretrial detainee, as a pretrial detainee, Plaintiff is entitled to even greater protections than those afforded under the Eighth Amendment. See Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008). The Court finds there is a genuine dispute of fact as to Rodriguez's use of force.

Rodriguez also argues that he is entitled to qualified immunity. (Doc. #106 at 14-5.) A defendant in a § 1983 action is entitled to qualified immunity from damages for civil liability if his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Court has found that, viewed in the light most favorable to Plaintiff, there is a genuine dispute of fact, which precludes summary judgment as to the constitutional violation. The Court will turn to the "qualified immunity inquiry" and ask if the right was clearly established at the relevant time. Saucier v. Katz, 533 U.S. 194, 201 (2001); Pearson v. Callahan, 129 S.Ct. 808 (Jan. 21, 2009). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201.

A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Kennedy v. City of Ridgefield, 439 F.3d 1055, 1065 (9th Cir. 2006) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). It is not necessary that there be a prior case with the identical facts showing that a right is clearly established; it is enough that there is preexisting law that provides a defendant

-12-

1 "fair warning" that his conduct was unlawful. <u>Kennedy</u>, 439 F.3d at 1065. At the time of
2 Plaintiff's incarceration, it was clearly established that Plaintiff had a constitutional right not
3 to be subjected to the use of excessive force. <u>Lolli</u>, 351 F.3d 415.

4 Defendants argue that Rodriguez "could not have believed that [his] conduct constituted
5 excessive force" because his only application of force was to place his knee on the back of
6 Plaintiff's thigh to prevent Plaintiff from turning toward him to kick him or head-butt him and
7 to hold Plaintiff on the ground for a few seconds. (Doc. #106 at 15.) But this argument on
8 the qualified immunity is the same as Rodriguez's defense to the constitutional violation and
9 therefore implicates the same genuine issues of material fact concerning whether Rodriguez
10 used excessive force and, therefore, whether he would reasonably know if his conduct was
11 unlawful. <u>See</u> <u>Martinez v. Stanford</u>, 323 F. 3d 1178, 1183-85 (9th Cir. 2003). Qualified
12 immunity will be denied.

13 The Court will grant the summary judgment motion as to Misquez. He denies Plaintiff's
14 allegations of force and attests that his only involvement was to escort Plaintiff to the isolation
15 cell and to keep Plaintiff in a prone position after he dropped to his knees and refused to walk.
16 Plaintiff does not dispute any of this. Under the circumstances, which included Plaintiff's
17 refusal or inability to walk, Misquez's actions were reasonable.

18 The Court will also grant the motion as to Arpaio, Maricopa County, and the Maricopa
19 County Board of Supervisors. Plaintiff offers no evidence of a policy or practice or tacit
20 authorization of the use of excessive force. Rule 56(e) compels the non-moving party to "set
21 out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or
22 denials in its own pleading." Fed. R. Civ. P. 56(e); <u>Matsushita Elec. Indus. Co., Ltd.</u>, 475 U.S.
23 at 586-87; <u>see</u> <u>Anderson</u>, 477 U.S. at 249 (the opposing party must, by affidavit or as otherwise
24 provided by Rule 56, designate specific facts that show there is a genuine issue for trial).
25 Plaintiff does not respond to Defendants' arguments except to assert that the letter terminating
26 Rodriguez "is a clear admission of guilt" by Maricopa County, the Board of Supervisors,
27 Arpaio, Rodriguez, Misquez, and McBride. (Doc. #114 at 12.). The Court does not agree.
28 The evidence of an extensive internal investigation of the incident, an apparent finding of

1  inappropriate conduct by Rodriguez, and Rodriguez's termination, in fact, suggest there was
2  no policy or practice or tacit authorization of the use of excessive force that led to the alleged
3  violation.  Plaintiff has offered nothing more than conclusory allegations, which are
4  insufficient to defeat summary judgment. See Taylor, 880 F.2d at 1045.

5        **B.**      **Count III—Medical Care**

6             **1.**      **Legal Standard**

7        As a pretrial detainee, Plaintiff is protected by the Fourteenth Amendment's Due
8  Process Clause, which establishes that "detainees have a right against jail conditions or
9  restrictions that 'amount to punishment.'" Pierce, 526 F.3d at 1205.  The Fourteenth
10 Amendment standard is more protective than the Eighth Amendment; "[t]his standard differs
11 significantly from the standard relevant to convicted prisoners, who may be subject to
12 punishment so long as it does not violate the Eighth Amendment's bar against cruel and
13 unusual punishment." Id.; Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004).  Although a
14 pretrial detainee's right to receive adequate medical care derives from the substantive Due
15 Process Clause of the Fourteenth Amendment, Gibson v. County of Washoe, 290 F.3d 1175,
16 1187 (9th Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)), it is difficult to apply
17 the "punishment" standard to medical care claims in the same manner it is applied to
18 conditions-of-confinement claims. See Pierce, 526 F.3d at 1206-13 (addressing detainees'
19 claims regarding reading materials, telephone access, holding cells, exercise, and other
20 conditions at the county's jail facilities).  Under the Due Process Clause, however, a detainee
21 is protected against conditions or conduct—including conduct related to medical
22 treatment—that is arbitrary or purposeless. See id. at 1205 (if a particular condition or
23 restriction is arbitrary or purposeless, a court may infer that the purpose of the action is
24 punishment that may not be inflicted on pretrial detainees) (citing Bell, 441 U.S. at 539). And
25 the Due Process Clause, at a minimum, imposes the same duty to provide adequate medical
26 care to those incarcerated as imposed by the Eighth Amendment. Gibson, 290 F.3d at 1187.
27 Therefore, the Eighth Amendment standards governing medical care may be applied. See
28 Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Jones v. Johnson, 781 F.2d 769, 771 (9th

1 Cir. 1986) ("the eighth amendment guarantees provide a minimum standard of care for
2 determining [the plaintiff's] rights as a pretrial detainee, including his right to medical care").

3       To establish a § 1983 claim for violation of the Eighth Amendment based on inadequate
4 medical care, a plaintiff must demonstrate "acts or omissions sufficiently harmful to evidence
5 deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).
6 This requires the plaintiff to satisfy both the objective and subjective components of a two-part
7 test. Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002). First, he must demonstrate that he
8 suffered a serious medical need. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).
9 Indications that a prisoner has a "serious" need for medical treatment include the existence of
10 an injury that a reasonable doctor or patient would find important and worthy of comment or
11 treatment, the presence of a medical condition that significantly affects an individual's daily
12 activities, or the existence of chronic and substantial pain. McGuckin v. Smith, 974 F.2d
13 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104
14 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

15       Second, the plaintiff must show that the defendant's response to that serious medical
16 need was deliberately indifferent. "[D]eliberate indifference to a prisoner's serious medical
17 needs is the 'unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 104-05. An
18 official is deliberately indifferent if he both knows of and disregards an excessive risk to an
19 inmate's health. Farmer, 511 U.S. at 837. Mere negligence or medical malpractice does not
20 establish a sufficiently culpable state of mind. Broughton v. Cutter Labs., 622 F.2d 458, 460
21 (9th Cir. 1980). At the same time, a prisoner does not have to prove that he was completely
22 denied medical care in order to demonstrate deliberate indifference. Lopez v. Smith, 203 F.3d
23 1122, 1132 (9th Cir. 2000). Deliberate indifference may be shown when an official denies,
24 delays, or intentionally interferes with treatment or by the way that a medical professional
25 provides care. Jett, 439 F.3d at 1096. A difference of medical opinion, however, is
26 insufficient to establish deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th
27 Cir. 2004).

28 / / /

1           **2.**       **Parties' Contentions**

2       McBride asserts that he examined Plaintiff shortly after the alleged assault; Plaintiff
3 complained of pain in his right wrist/forearm and in his right jaw. (DSOF ¶ 16; McBride Aff.
4 ¶ 7.) Plaintiff did not complain of elbow/shoulder pain, dislodged dental fillings, blurred
5 vision, hearing loss, back pain, chest pain, headache, or difficulty breathing, and he told
6 McBride that he had had pain in his jaw for two weeks after being hit with the butt of a
7 shotgun; x-rays had been taken at Phoenix Baptist Hospital which confirmed that his jaw was
8 broken. (DSOF ¶ 16; McBride Aff. ¶¶ 7-8.)

9       McBride documented a "superficial skin contusion distal ulna consistent with handcuff
10 usage" and noted no other soft tissue injuries. (DSOF ¶ 17.) He noted capillary refill of less
11 than 3 seconds on all digits; intact sharp/dull differentiation of all fingers; good flexion and
12 extension strength of all digits and wrist; Plaintiff was able to pronate/supinate his forearm
13 unrestricted; no elbow/shoulder involvement. (Id. ¶ 17.) McBride applied a splint to
14 Plaintiff's right forearm/hand, noting good support and that Plaintiff's capillary refill was
15 unchanged after applying the splint. McBride noted no obvious swelling/crepitus/bony
16 deformities. (Id. ¶ 18.) Plaintiff was not in acute distress and was speaking easily but with
17 minimal jaw movement. (Id. ¶ 18.) McBride saw no external signs of trauma to Plaintiff's
18 jawline. (Id. ¶ 18.)

19       McBride asserts that it was not his responsibility to "schedule all medical visits for
20 inmates at Maricopa County 4th Ave. Jail and resolve medical grievances." (Id. ¶ 19;
21 McBride Aff. ¶ 15.) He examined Plaintiff and called the on-call provider for orders; he
22 received orders from the on-call provider for a splint, Motrin 800 mg by mouth twice a day for
23 seven days, and follow up at the next facility regarding an x-ray to rule out fracture versus
24 contusion of right forearm. (DSOF ¶ 20.) McBride applied the splint, and an order for an x-ray
25 of Plaintiff's right wrist was written on May 30, 2006. (Id.)

26       McBride noticed no signs consistent with a concussion, and Plaintiff did not complain
27 of elbow/shoulder pain, dislodged dental fillings, blurred vision, hearing loss, back pain, chest
28 pain, headache, or difficulty breathing. (Id. ¶ 21; McBride ¶¶ 8-9.) Plaintiff received the first

1  dose of Motrin at approximately 5:00 p.m. on May 29, 2006, and continued to receive Motrin
2  800 mg by mouth twice a day through June 5, 2006. (DSOF ¶ 22.)

3  An x-ray of Plaintiff's right wrist was taken on May 31 and showed normal bony
4  architecture and no acute bony injury. (Id. ¶ 24.) The spine x-ray showed changes suggestive
5  of muscle spasm and no acute bony abnormality or other abnormalities. (Id.). A September
6  5, 2006 chest x-ray, taken because Plaintiff felt an injury while moving a table, showed no
7  evidence of rib fracture. (Id. ¶ 25.)

8  Defendants also assert that several of the physical problems that Plaintiff claims resulted
9  from the May 29 incident can actually be traced to injuries and complaints that pre-date the
10 incident. For example, Plaintiff's complaints regarding his left hand predate the incident by
11 nearly two years. (Id. ¶ 26; Ex.14.) In June 2004, during an earlier incarceration, Plaintiff
12 complained about a broken left fifth finger and that he had been beaten with a poll stick and
13 received a broken nose. (Id.) Likewise, in 2004 he complained of nerve damage in his left arm
14 and hand and problems with his right hand. (DSOF ¶¶ 29-30; Exs.16, 17.) He also advised
15 a Jail psychologist in July 2006 that he had a history of migraines prior to incarceration.
16 (DSOF ¶ 31; Ex. 5.)

17 Defendants argue that McBride responded to Plaintiff's medical needs when he saw
18 Plaintiff shortly after the alleged assault, examined the areas where he complained of pain, and
19 obtained orders from the on-call provider for a splint and pain reliever; he applied a splint and
20 Plaintiff received the pain medication. Because McBride was not involved in scheduling
21 medical visits for inmates in the 4th Avenue Jail or for resolving inmate medical grievances,
22 he cannot have been deliberately indifferent by failing to perform these tasks.

23 Plaintiff did not respond to McBride's assertions.

24 **3. Analysis**

25 Defendants have provided evidence that McBride responded appropriately to Plaintiff's
26 medical needs. Plaintiff does not dispute McBride's assertions. See Anderson, 477 U.S. at
27 249 (the opposing party must, by affidavit or as otherwise provided by Rule 56, designate
28 specific facts that show there is a genuine issue for trial). Because there is no genuine issue

of material fact, the Court will grant summary judgment to McBride on Plaintiff's claim for deliberate indifference.[6]

### IV.     State Law Claims

Defendants argue that Plaintiff's state-law claims were dismissed from his original Complaint and assert that the Court gave Plaintiff leave to amend the Complaint only in order to name the John Doe Defendants. (Doc. #106 at 15, ref. Doc. # 4.) They further assert that when Plaintiff filed his Amended Complaint, the Court did not address the state-law claims that were included in the Amended Complaint but which had been dismissed from the original Complaint. (Doc. #106 at 16.) They ask the Court to dismiss the state-law claims.

Defendants note that a court may exercise pendent jurisdiction over state law claims if "there is a sufficiently substantial federal claim to confer federal jurisdiction in the first place, and a common nucleus of operative fact between the state and federal claims," In Re Nucorp Energy Securities Litigation, 772 F.2d 1486, 1487 (9th Cir. 1985) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)), and that the Court found that these requirements were met in the instant case. (Doc. #106 at 16, ref. Doc. #4 at 3.) Nevertheless, the Court dismissed the state law claims because Plaintiff did not allege that he had complied with the notice of claim procedures in Ariz. Rev. Stat. § 12-821.01. (Doc. #4 at 3.) Defendants also note that in the Amended Complaint, Plaintiff asserted that he served a Notice of Claim on Arpaio and Maricopa County. (Doc. #106 at 17, ref. Doc. #42 at 4B.)

Defendants ask that the Court strike the allegations related to the state law claims because they were already properly dismissed. (Doc. #106 at 17.) Plaintiff does not respond to Defendants' arguments regarding the state-law claims.

The Court will deny Defendants' motion as to the state claims because in his Amended Complaint, Plaintiff alleged compliance with the Notice of Claim requirements. Specifically, he alleged that he filed his Notice on November 22, 2006, which would appear to be timely.

---

[6]As with the Counts relating to excessive force, Defendants address only the federal medical claim and do not address the state-law claims for negligence and medical malpractice.

-18-

See Ariz. Rev. Stat. § 12-821.01(A) (notice must be filed within 180 days after the claim accrues). The Court is not persuaded by Defendants' argument that because the state-law claims were dismissed on screening of the original Complaint, Plaintiff could not amend his Complaint to correct a deficiency. Those claims were not dismissed with prejudice. (Doc. #4 at 3-4, 12.) The Court notes that Defendants do not assert that Plaintiff did not file a Notice of Claim and they make no argument as to any inadequacy of the Notice.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. #106).

(2) Defendants' Motion for Summary Judgment (Doc. #106) is **granted in part and denied in part** as follows:

(a) **granted** as to the federal claims against Misquez in Count I; the federal claims against Arpaio, Maricopa County, and the Maricopa County Board of Supervisors in Count II; and the federal claim against McBride in Count III;

(b) **denied** in all other respects.

(3) The remaining claims are:

(a) Count I—federal and state claims against Rodriguez and state claims against Misquez;

(b) Count II—state claims against Arpaio, Maricopa County, and the Maricopa County Board of Supervisors; and

(c) Count III—state claims against McBride.

DATED this 8th day of April, 2009.

_____
Mary H. Murguia
United States District Judge